DAVIS WRIGHT TREMAINE LLP
  David A. Ernst (*pro hac vice*)
  *daveernst@dwt.com*
  P. Andrew McStay, Jr. (*pro hac vice*)
  *andrewmcstay@dwt.com*
1300 SW Fifth Avenue, Suite 2400
Portland, Oregon 97201-5610
Telephone:  (503) 778-5302
Facsimile:  (503) 778-5299

DAVIS WRIGHT TREMAINE LLP
  James H. Moon (SBN 268215)
  *jamesmoon@dwt.com*
865 S. Figueroa St., Suite 2400
Los Angeles, California 90017-2566
Telephone:  (213) 633-6819
Facsimile:  (213) 633-6899

*Attorneys for Defendants Taylor Farms Pacific, Inc., Taylor Farms Retail, Inc., Taylor Farms California, Inc., Sam's West, Inc., and Walmart Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| RICK MUSGRAVE and MARGARET GRAY, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TAYLOR FARMS PACIFIC, INC., TAYLOR FARMS RETAIL, INC., TAYLOR FARMS CALIFORNIA, INC., SAM'S WEST, INC., and WALMART INC.,<br><br>Defendants. | Case No. 4:18-cv-02841-JSW<br>Hon. Jeffrey S. White<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Request for Judicial Notice and Proposed Order Filed Concurrently*]<br><br>Hearing<br>Date:          February 22, 2019<br>Time:          9:00 a.m.<br>Courtroom:   5<br><br>Action Filed:  May 14, 2018 |

## NOTICE OF MOTION

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 22, 2019, at 9:00 a.m., in Courtroom 5 of the above-captioned Court, located at the Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, Taylor Farms Pacific, Inc.; Taylor Farms Retail, Inc.; and Taylor Farms California, Inc. ("Taylor Farms"); and Sam's West, Inc.; and Walmart Inc. (the "Retailer Defendants") (collectively, "Defendants") will and hereby do move the Court for an order dismissing with prejudice the First Amended Complaint of Plaintiffs Rick Musgrave and Margaret Gray ("Plaintiffs") pursuant to Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6).

This motion is made on the grounds that the First Amended Complaint fails to state a claim upon which relief may be granted for (1) breach of the implied warranty of merchantability for food; (2) violation of California's Consumer Legal Remedies Act ("CLRA"); (3) violation of California's False Advertising Law ("FAL"); or (4) violation of California's Unfair Competition Law ("UCL").

This motion is based on this notice and motion; the attached memorandum; the concurrently filed Request for Judicial Notice; all pleadings, records, and files in this action; and such evidence and argument as may be presented at or before the hearing on this motion.

Dated:  December 14, 2018

DAVIS WRIGHT TREMAINE LLP
David A. Ernst
P. Andrew McStay, Jr.
James H. Moon

By:  /s/ James H. Moon
    James H. Moon

*Attorneys for Defendants*

1

## **STATEMENT OF ISSUES TO BE DECIDED**

2

1.   Whether Plaintiffs' First Amended Complaint fails to state a claim against

3

Defendants for the following reasons:

4

a.   ***Misrepresentation Claims***:  Plaintiffs' claims under the CLRA, FAL, and

5

UCL—based on alleged "misrepresentations" regarding Taylor Farms'

6

products—fail because Plaintiffs (i) lack standing to pursue their claims

7

for failure to allege "actual reliance" on any purported misrepresentation

8

attributable to any of the five Defendants, and (ii) do not identify any

9

actionable misrepresentation regarding the safety of the products that was

10

false or misleading.

11

b.   ***Defect Claim***:  Plaintiffs' claim for breach of implied warranty of

12

merchantability—based on allegations of tortious "defects" in Taylor

13

Farms' products—fails because the "economic loss" doctrine bars all such

14

tort claims in circumstances—as here—where plaintiffs expressly disclaim

15

any recovery based on physical injury.

16

c.   ***Causation***:  *All* of Plaintiffs' claims also fail because Plaintiffs have not

17

adequately alleged that Taylor Farms' products—as opposed to another

18

cause of illness—caused the vague symptoms alleged by Plaintiffs.

19

2.   Whether Plaintiffs are entitled to prospective injunctive relief when there is no

20

alleged threat of future injury to be remedied by the Court.

21

22

23

24

25

26

27

28

iii

# **TABLE OF CONTENTS**

**Page**

I.   SUMMARY OF ARGUMENT ...................................................................................1

II.  FACTUAL ALLEGATIONS .....................................................................................2

    A.   Defendants Manufacture and Sell Romaine Lettuce Products ...........................2

    B.   An Advisory Is Issued After the CDC Initiates an Investigation .......................2

    C.   Plaintiffs Consume Taylor Farms' Products and File Suit ..................................2

    D.   The CDC Concludes That the Outbreak Is Over .................................................3

    E.   The Court Dismisses Each of Plaintiffs' Claims .................................................3

    F.   Plaintiffs File Their First Amended Complaint ...................................................4

III. ARGUMENT ..............................................................................................................4

    A.   Plaintiffs' Misrepresentation Claims Again Fail as a Matter of Law. ................4

        1.   Plaintiffs Failed to Adequately Allege Statutory Standing Based on
Their Conclusory Allegations of Reliance. ............................................4

        2.   Plaintiffs Failed to Allege Reliance on Specific Representations
Made by Each Defendant Under Rule 9(b). ...........................................5

            a.   The Retailer Defendants Did Not Make, Adopt, or Control
Any Statement That Plaintiffs Relied Upon. ..............................6

                (1)   The Retailer Defendants Did Not Make, Adopt, or
Control Any Statement. ...................................................6

                (2)   Plaintiffs Did Not Rely on Any Statement by the
Retailer Defendants. ........................................................7

            b.   Plaintiffs Failed to Distinguish the Taylor Farms
Defendants. ..................................................................................8

        3.   Plaintiffs Fail to Allege Any Actionable Misrepresentation. .................9

    B.   Plaintiffs' Defect Claim Again Fails as a Matter of Law. .................................10

    C.   All of Plaintiffs' Claims Fail Because They Have Not Alleged Causation..........12

        1.   The Alleged Voluntary Recall Does Not Support Causation. ................12

        2.   Allegations of Mere Illness Do Not Support Causation. .......................13

MOTION TO DISMISS
No. 4:18-cv-02841-JSW

3.      The Authorities Plaintiffs Relied Upon Do Not Support Causation..........14

D.      Plaintiffs Lack Standing to Seek Injunctive Relief.................................................15

IV.     CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arroyo v. Chattem, Inc.*,
  926 F. Supp. 2d 1070 (N.D. Cal. 2012) ...................................................................5

*Brod v. Sioux Honey Ass'n*,
  927 F. Supp. 2d 811 (N.D. Cal. 2013) ....................................................................5

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ...............................................................................4

*City of Pomona v. SQM N. Am. Corp.*,
  750 F.3d 1036 (9th Cir. 2014) .............................................................................10

*Curry v. Fred Olsen Line*,
  367 F.2d 921 (9th Cir. 1966) ...............................................................................11

*Dremak v. Iovate Health Scis. Grp., Inc.*,
  299 F.R.D. 648 (S.D. Cal. 2014) ........................................................................6, 7

*Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ...............................................................................13

*Elias v. Hewlett-Packard Co.*,
  903 F. Supp. 2d 843 (N.D. Cal. 2012) ....................................................................5

*Fields v. Los Angeles*,
  No. 16-3213, 2017 U.S. Dist. LEXIS 222078 (C.D. Cal. Nov. 2, 2017) ...............14

*Fresh Express Inc. v. Beazley Syndicate*,
  199 Cal. App. 4th 1038 (2011) .............................................................................12

*Greenman v. Yuba Power Prods., Inc.*,
  59 Cal.2d 57 (1963) ............................................................................................11

*In re Ferrero Litig.*,
  794 F. Supp. 2d 1107 (S.D. Cal. 2011).....................................................................8

*In re iPhone Application Litig.*,
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) .......................................................................4

*In re Sony Gaming Networks Litig.*,
  996 F. Supp. 2d 942 (S.D. Cal. 2014).....................................................................14

vi

*In re Toyota Motor Corp.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011) ..................................................................7

*In re WellPoint, Inc. Litig.*,
    903 F. Supp. 2d 880 (C.D. Cal. 2012) ....................................................................7

*Karkanen v. California*,
    No. 17-6967, 2018 U.S. Dist. LEXIS 135536 (N.D. Cal. Aug. 10, 2018) ...............6

*Kearns v. Ford Motor Co.*,
    567 F. 3d 1120 (9th Cir. 2009) ...............................................................................4

*Klein v. Duchess Sandwich Co.*,
    14 Cal.2d 272 (1939) ............................................................................................11

*Little Lady Foods, Inc. v. Houston Cas. Co.*,
    819 F. Supp.2d 759 (N.D. Ill. 2011) ......................................................................12

*Long v. Hewlett-Packard Co.*,
    No. 06-2816, 2007 U.S. Dist. LEXIS 79262 (N.D. Cal. July 27, 2007) ..................9

*Marcus v. Apple Inc.*,
    No. 14-3824, 2015 U.S. Dist. LEXIS 2140 (N.D. Cal. Jan. 8, 2015).......................9

*Minkler v. Apple, Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) .......................................................................9

*Moses v. Danek Med., Inc.*,
    No. 95-512, 1998 U.S. Dist. LEXIS 21110 (D. Nev. Nov. 18, 1998)....................13

*N. Am. Chem. Co. v. Superior Court*,
    59 Cal. App. 4th 764 (1997) ...........................................................................1, 10

*Pastor v. All. Telcom*,
    No. 09-6241, 2009 U.S. Dist. LEXIS 135664 (C.D. Cal. Nov. 17, 2009) ........5, 12

*Ramage v. Forbes Int'l*,
    987 F. Supp. 810 (C.D. Cal. 1997) ..........................................................................9

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) .....................................................................................10, 11

*Sarti v. Salt Creek Ltd.*,
    167 Cal. App. 4th 1187 (2008) ..............................................................................13

*Sateriale v. R.J. Reynolds Tobacco Co.*,
    697 F.3d 777 (9th Cir. 2012) ...................................................................................4

*Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*,
   78 Cal. App. 4th 847 (2000) ................................................................................................11

*Simmons v. Bos. Sci. Corp.*,
   No. 12-7962, 2013 U.S. Dist. LEXIS 45852 (C.D. Cal. Mar. 25, 2013)..............................12

*Sloan v. GM LLC*,
   No. 16-7244, 2017 U.S. Dist. LEXIS 120851 (N.D. Cal. Aug. 1, 2017) ..............................12

*Stearns v. Select Comfort Retail Corp.*,
   No. 08-2746, 2009 U.S. Dist. LEXIS 48367 (N.D. Cal. June 5, 2009)..................................12

*Thomas v. Costco Wholesale Corp.*,
   No. 12-2908, 2014 U.S. Dist. LEXIS 46405 (N.D. Cal. Mar. 31, 2014) .................................4

*Valdez v. Beard*,
   No. 14-1839, 2018 U.S. Dist. LEXIS 29645 (E.D. Cal. Feb. 22, 2018) ................................13

STATUTES

Cal. Com. Code § 2314.............................................................................................................10

RULES

Fed. R. Civ. P. 9(b) .............................................................................................................passim

Fed. R. Civ. P. 11........................................................................................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   SUMMARY OF ARGUMENT

On April 10, 2018, the Centers for Disease Control and Prevention ("CDC") began an investigation into potential *E. coli* contamination of romaine lettuce products.  After a voluntary and precautionary recall at one store based on this publicized concern, Plaintiffs filed a class action alleging:  (1) that Defendants made, adopted, or controlled "misrepresentations" about the safety of their lettuce products, and (2) that the products they purchased were "defective."  Although Plaintiffs claim to have become sick after consuming the products, they disclaim any recovery for physical injuries and merely seek to recover the cost of the lettuce based on the assumption that the presumed contamination affected tens of thousands of customers.  On October 17, 2018, the Court dismissed each of Plaintiffs' claims in their original complaint.  The First Amended Complaint ("FAC") fares no better and should be dismissed with prejudice.

The *Misrepresentation Claims* again fail because—despite the Court's order—Plaintiffs have failed to differentiate between the five manufacturer and retailer Defendants or explain (a) what they each said, and (b) how Plaintiffs relied on each statement.  (Order, ECF No. 45, at 7-8.)  Plaintiffs have also failed to identify any representation at all, by anyone, relating to safety.

The *Defect Claim* again fails because it is barred by the "economic loss" doctrine.  Plaintiffs concede that they are only seeking recovery for "economic injury" and disclaim any recovery for "personal injury."  (FAC, ECF No. 46, ¶ 43.)  This concession precludes Plaintiffs' claim under the "economic loss" doctrine, which bars tort claims solely for economic loss.  *See N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 780 (1997).

*All of Plaintiffs' claims* also fail for failure to allege causation.  To be clear, there are no allegations that Plaintiffs were exposed to *E. coli* or that their symptoms resembled those relating to *E. coli*.  Plaintiffs merely allege that they ate the products and became sick immediately thereafter, which is facially inconsistent with *E. coli* exposure.  Allowing a class action based on mere vague allegations of sickness would substantially broaden the liability faced by manufacturers and retailers and provide no benefit to consumers who indisputably remain protected in the event of physical harm in cases (unlike this) seeking recovery for such harms.

## II.     FACTUAL ALLEGATIONS

### A.     Defendants Manufacture and Sell Romaine Lettuce Products

Defendants Taylor Farms Pacific, Inc.; Taylor Farms Retail, Inc.; and Taylor Farms California, Inc. are three separate corporate entities that allegedly "do business" as "Taylor Farms." (FAC ¶ 27.)  "Taylor Farms" is the world's largest fresh salad processor, with eleven plants, including in California and Arizona.  (*Id.* ¶¶ 13, 27.)  "Taylor Farms" manufactures dozens of produce products, including various romaine lettuce products promoted to be "triple washed and ready to eat" and "ready to enjoy."  (*Id.* ¶¶ 1, 3.)

The Retailer Defendants—Sam's West, Inc., and Walmart Inc.—sell Taylor Farms' lettuce products.  (FAC ¶¶ 14-15.)  Plaintiffs allege that the Retailer Defendants "entered into marketing and sales agreements with Taylor Farms to sell Taylor Farms products," and that each "promotes and markets Taylor Farms products in its stores and on its website" by showing "pictures of numerous Taylor Farms products, including those containing romaine lettuce" and "statements like 'ready to eat' and 'ready to enjoy.'"  (*Id.* ¶¶ 29-30.)

### B.     An Advisory Is Issued After the CDC Initiates an Investigation

On April 10, 2018, after a multistate outbreak of *E. coli* infections, the CDC issued a statement that an investigation was underway.  (FAC ¶ 6.)  *E. coli* is bacteria, certain strains of which, including strain O157:H7, cause "severe illness, including bloody diarrhea and kidney failure."  (*Id.* ¶ 7.)  By April 25, 2018, the CDC reported that people across 25 states had reported O157:H7 *E. coli* infections linked to lettuce grown in Yuma, Arizona.  (*Id.* ¶ 11.)

On April 15, 2018, a representative of Sam's Club issued a message to its members stating that "[w]e were notified that Taylor Farms . . . has initiated a withdrawal on [eight lettuce products] due to the potential to be contaminated with E. coli."  (FAC ¶¶ 16-17.)  Walmart posted a notice "about the *E. coli* contamination of romaine lettuce" on its "website."  (*Id.* ¶ 20.)

### C.     Plaintiffs Consume Taylor Farms' Products and File Suit

On May 14, 2018, a month after the CDC announced the start of its investigation, Plaintiffs filed their original complaint in this action.  (See ECF No. 1.)  According to Plaintiffs, "[t]his is a class action lawsuit on behalf of purchasers of [various] Taylor Farms' Romaine

Lettuce Products, which were marketed as 'triple washed and ready to eat' and 'ready to enjoy,' but were actually contaminated with *E. coli* bacteria." (FAC ¶ 1.)

Plaintiffs concede that their lawsuit "is not intended to request any recovery for personal injury and claims related thereto." (FAC ¶ 43.) Despite this, Plaintiffs allege they consumed Taylor Farms' products and imply a causal connection between their consumption of the products and their alleged illness immediately thereafter that same day and the next. (*Id.* ¶¶ 31-32.) The CDC's webpage identified in the Complaint states that *E. coli* symptoms emerge "2-8 days (average of 3-4 days) after swallowing the germ." (Request for Judicial Notice ("RJN"), Ex. B.) In contrast to the CDC guidance, Plaintiffs allege that "[a]ccording to the Mayo Clinic, *E. coli* symptoms can appear as soon as one day after exposure." (FAC ¶ 7; RJN, Ex. C.)

### D.   The CDC Concludes That the Outbreak Is Over

Plaintiffs concede that—due to the limited lifecycle of lettuce—contaminated lettuce "could be on the shelves through mid-May 2018" at the latest. (FAC ¶ 21.) The CDC webpage relied upon in the Complaint confirms that any lettuce products under investigation are no longer available: "According to the FDA, the last shipments of romaine lettuce from the Yuma growing region were harvested on April 16, 2018, and the harvest season there has ended. Contaminated lettuce . . . should no longer be available." (RJN, Ex. A at 3.) In the words of the CDC in its "Final Update" on the matter, "[t]his outbreak appears to be over." (*Id.* at 1, 3.)

### E.   The Court Dismisses Each of Plaintiffs' Claims

On October 17, 2018, the Court dismissed all of Plaintiffs' claims in the initial complaint. (*See* Order 3-8.) The Court dismissed the "Misrepresentation Claims" because they did "not clearly distinguish between the various defendants and do not identify a misrepresentation made by each defendant on which they relied." (*Id.* at 6-8.) The Court also dismissed the "Defect Claims" because the negligence claim was barred by the "economic loss" rule, and the implied warranty claim was inadequately pled. (*Id.* at 4-5.) The Court allowed Plaintiffs leave to amend, but instructed that they "shall not lump the defendants together," "[r]ather, Plaintiffs shall clearly identify what actions a particular defendant is alleged to have taken and/or what representations a defendant [made]." (*Id.* at 3 n.3)

MOTION TO DISMISS
No. 4:18-cv-02841-JSW

**F.      Plaintiffs File Their First Amended Complaint**

On November 7, 2018, Plaintiffs filed their FAC.  (*See* ECF No. 46; *see also* ECF No. 49 (redline).)  This motion followed based on the continuing pleading failures outlined below.

**III.    ARGUMENT**

**A.      Plaintiffs' Misrepresentation Claims Again Fail as a Matter of Law.**

Plaintiffs' Misrepresentation Claims for violation the CLRA, FAL, and UCL are based on allegations of knowing misrepresentations by Defendants to induce Plaintiffs to purchase the products.  (FAC ¶¶ 4-5, 64, 70, 76, Ex. A at 2.)  As the Court concluded previously (Order 7), because these claims assert a unified course of fraudulent conduct, Plaintiffs "must state with particularity the circumstances constituting fraud" under Federal Rule of Civil Procedure 9(b).  *Kearns v. Ford Motor Co.*, 567 F. 3d 1120, 1124 (9th Cir. 2009).  "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the] statement, and why it is false."  *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).  Plaintiffs' Misrepresentation Claims should be dismissed again under Rule 9(b) because Plaintiffs have failed to allege (1) which Defendants made which representations upon which Plaintiffs purportedly relied, and (2) that any actionable misrepresentation is false or misleading.

**1.      Plaintiffs Failed to Adequately Allege Statutory Standing Based on Their Conclusory Allegations of Reliance.**

California's consumer protection laws "incorporate the Article III standing requirements, but additionally require that the plaintiff plead an economic injury."  *Thomas v. Costco Wholesale Corp.*, No. 12-2908, 2014 U.S. Dist. LEXIS 46405, at *12 (N.D. Cal. Mar. 31, 2014).  For an injury to satisfy this standard, a plaintiff is required to allege "actual reliance on the allegedly deceptive or misleading statements," and that "the misrepresentation was an immediate cause of [the] injury-producing conduct."  *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012).  "Actual reliance" requires that "Plaintiffs must have seen the misrepresentations and taken some action based on what they saw—that is, Plaintiffs must have actually relied on the misrepresentations to have been harmed by them."  *In re iPhone*

*Application Litig.*, 6 F. Supp. 3d 1004, 1015 (N.D. Cal. 2013). Absent such allegations, misrepresentation claims under the UCL, FAL, and CLRA fail as a matter of law. *See Arroyo v. Chattem, Inc.*, 926 F. Supp. 2d 1070, 1080 (N.D. Cal. 2012).

The Court previously dismissed the Misrepresentation Claims because Plaintiffs failed to allege actual reliance. (Order 7.) In response, Plaintiffs now allege that they "saw, read, and relied on the representation on the packaging that the products were 'ready to eat' and 'ready to enjoy.'" (FAC ¶¶ 30-31.) They also say that they "would not have purchased" the products had they known the products "were in fact completely unusable." (*Id.*)

These allegations of "reliance" are still nothing more than a legal conclusion and—as this Court has repeatedly held based on indistinguishable allegations—are insufficient as a matter of law under Rule 9(b). *See Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 855 n.3 (N.D. Cal. 2012) ("his only statement of reliance on Defendants' conduct is entirely conclusory in nature— it does not allege with any particularity *how* Plaintiff relied on Defendants' representations, nor does it allege *why* Plaintiff would have acted differently without those representations"); *Brod v. Sioux Honey Ass'n*, 927 F. Supp. 2d 811, 828 (N.D. Cal. 2013) (rejecting "threadbare conclusory recitals that 'Plaintiff and members of the Class would not have purchased the Sue Bee Honey' had they known that it was 'filtered or pollen-free'"); *Pastor v. All. Telcom*, No. 09-6241, 2009 U.S. Dist. LEXIS 135664, at *8 (C.D. Cal. Nov. 17, 2009) (rejecting conclusory allegations that plaintiffs "would not have purchased" products absent misrepresentation because it was not "accompanied by any additional 'factual allegations' as contemplated by *Iqbal*"). There are still no factual details about how the representations affected Plaintiffs' purchase decision at the time of purchase or why they mattered. The Misrepresentation Claims thus fail as a matter of law.

> **2.      Plaintiffs Failed to Allege Reliance on Specific Representations Made by Each Defendant Under Rule 9(b).**

Even if these generalized and conclusory allegations of reliance could be sufficient to satisfy statutory standing (they are not), Plaintiffs still fail to state any Misrepresentation Claim under Rule 9(b) because they failed to precisely identify what *each* defendant said, if anything, and how Plaintiffs relied on *each* of those particular representations, if at all.

In its prior order, the Court expressly dismissed the Misrepresentation Claims because "*Plaintiffs have not clearly distinguished between the various defendants and do not identify a misrepresentation made by each defendant on which they relied and, therefore, fail to comply with Rule 9(b).*" (Order 7.)  Therefore, the Court—in allowing leave to amend—expressly instructed that Plaintiffs "shall not lump the defendants together, including the Taylor Farms Defendants.  Rather, *Plaintiffs shall clearly identify what actions a particular defendant is alleged to have taken and/or what representations a defendant is alleged to have made.*" (Order 3 n.3)  This instruction was necessary based on Plaintiffs' "group pleading" allegations, which deprived any individual defendant of basic facts regarding what they supposedly said and when.  *See Karkanen v. California*, No. 17-6967, 2018 U.S. Dist. LEXIS 135536, at *18 (N.D. Cal. Aug. 10, 2018) (collecting sources).  Plaintiffs have failed to correct this failure.

### a.   The Retailer Defendants Did Not Make, Adopt, or Control Any Statement That Plaintiffs Relied Upon.

To hold a retailer liable for alleged misstatements, "Plaintiffs must allege that [1] each Retailer Defendant made, adopted, or controlled representations that [2] Plaintiffs heard or saw prior to purchasing the products."  *Dremak v. Iovate Health Scis. Grp., Inc.*, 299 F.R.D. 648, 656 (S.D. Cal. 2014).  Plaintiffs have not alleged either element against the Retailer Defendants.

### (1)   The Retailer Defendants Did Not Make, Adopt, or Control Any Statement.

The Court previously dismissed the Misrepresentation Claims against the Retailer Defendants because Plaintiffs' allegations were "conclusions couched as facts, which are insufficient to allege either Sam's or Walmart 'made, adopted, or controlled' the representations at issue." (Order 8.)  In response, Plaintiffs added allegations that the Retailer Defendants (1) have sold Taylor Farms products for years, (2) entered into "marketing and sales agreements with Taylor Farms," and (3) each "promotes and markets Taylor Farms products in its stores and on its website." (*See* FAC ¶¶ 3, 29-30.)  Plaintiffs' allegations again fall short.

*First*, the allegation that the Retailer Defendants have "sold Taylor Farms products for years" (FAC ¶¶ 29-30) does nothing to establish that they "made, adopted, or controlled

representations" relating to Taylor Farms' products.  By definition, all retailers sell manufacturers' product.  That is not enough to impose liability against them.

*Second*, the existence of vaguely-referenced "marketing and sales agreements" similarly do not establish that they "made, adopted, or controlled representations" relating to Taylor Farms.  There is no allegation about the terms of these purported contracts, what they obligated or allowed the Retailer Defendants to do or say regarding Taylor Farms' products, or what relationship they compelled between the Retailer Defendants and Taylor Farms.

*Third*, Plaintiffs' allegations that the Retailer Defendant "promote[ ] and market[ ] Taylor Farms products in its stores" (FAC ¶¶ 29-30) are conclusory and do not explain *what* the Retailer Defendants did or said, or *how* they adopted or controlled any statement as required under Rule 9(b).  *See In re Toyota Motor Corp.*, 826 F. Supp. 2d 1180, 1192 (C.D. Cal. 2011) (allegations regarding a defendant's "responsibility for . . . advertising" and for "marketing" products were entirely "conclusory" because they provide no basis for what they did); *In re WellPoint, Inc. Litig.*, 903 F. Supp. 2d 880, 926 (C.D. Cal. 2012) (rejecting "[c]onclusory allegations that [defendant] advertises, promotes and sell[s]").[1]

### (2) Plaintiffs Did Not Rely on Any Statement by the Retailer Defendants.

In addition, none of Plaintiffs' new allegations adds to the central issue of whether the Retailer Defendants "made, adopted, or controlled ***representations that Plaintiffs heard or saw*** prior to purchasing the products."  *Dremak v. Iovate Health Scis. Grp., Inc.*, 299 F.R.D. 648, 656 (S.D. Cal. 2014); *accord* Order 7 ("Plaintiffs have not clearly distinguished between the various defendants and do not identify a misrepresentation made by each defendant on which they relied and, there, fail to comply with Rule 9(b).").  There is no allegation that Plaintiffs saw, read, or relied upon anything purportedly posted on the Retailer Defendants' websites.  (*See* FAC ¶¶ 29-

---

[1] In addition, these allegations do not even state that the Retailer Defendants "promoted or marketed" the Taylor Farms romaine lettuce products at issue in this case in their retail stores where the purchases were made.  This sleight-of-hand is revealed by comparison of the allegation that each of the Retailer Defendants "promotes and markets Taylor Farms products in its stores" to the very next sentence, which specifies that the Retailer Defendants market the "romaine lettuce" products at issue in this case on their "websites."  (FAC ¶¶ 29-30.)

MOTION TO DISMISS
No. 4:18-cv-02841-JSW

32.)  The purported statements on the Retailer Defendants' websites are thus irrelevant.  *See In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011).  The allegations are instead that Plaintiffs saw the "packaging" of the products at the brick-and-mortar stores.  (*See* FAC ¶ 31.)  The "packaging" was not put on the products by Retailer Defendants.  There is no allegation that they did anything or made any statement on any packaging, or that Plaintiffs relied upon such statements.  The Retailer Defendants therefore cannot be held responsible for such statements.

### b. Plaintiffs Failed to Distinguish the Taylor Farms Defendants.

Plaintiffs' allegations are also insufficient as to the Taylor Farms entities.  The Court previously instructed Plaintiffs to "not lump the defendants together, including the Taylor Farms Defendants" and, rather, "clearly identify what actions a particular defendant is alleged to have taken."  (Order 3 n.3)  Despite this guidance, Plaintiffs have failed to follow it.

In the FAC, the allegations specific to the three separate legal entities are that:  (1) Taylor Farms Pacific, Inc. "packages and processes various Taylor Farms products," (2) Taylor Farms Retail, Inc. "controls product sales and customer service," "generally facilitates communications with consumers and the public," and "engages in [ ] the preparation of bagged lettuce and vegetables and refrigerated warehousing and storage activities," and (3) Taylor Farms California, Inc. "manufactures and delivers fresh produce to the foodservice industry" and "offers salads and cut fruits and vegetables."  (FAC ¶¶ 24-26.)  None of these new allegations adequately explains which of these separate entities made the challenged statement regarding the romaine lettuce products at issue in this action that Plaintiffs purportedly saw and relied upon in making their purchase decisions.  (*Id.* ¶ 1.)  Instead, Plaintiffs again make vague and conclusory statements about the defendants' involvement with "various Taylor Farms products," "product sales," and "fresh produce."  (*Id.* ¶¶ 24-26.)

These are also general allegations regarding all of these separate entities collectively "participat[ing] in the manufacture, distribution, sale, marketing, and representation of Taylor Farms Romaine Lettuce Products," without explaining what each entity did with respect to "manufacture, distribution, sale, marketing, and representation."  (FAC ¶ 28; accord *id.* ¶¶ 31-32, 50, 64, 71.)  These are no different from the "group pleading" allegations that "Defendants"

made "false and misleading" representations from the original complaint—which remain in the FAC (*id.* ¶¶ 1-5, 23)—that the Court found lacking before (Order 8 n.4).

### 3. Plaintiffs Fail to Allege Any Actionable Misrepresentation.

Even if Plaintiffs had identified what each defendant said or did (they did not) and relied on what each defendant said or did (they did not), their claims would still fail because they have not alleged that any purported statement was false or misleading.

To adequately allege misrepresentation claims under Rule 9(b), a plaintiff must identify a "specific statement" or "promise" that was directly rendered false or misleading based on the alleged truth. *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 821 (N.D. Cal. 2014) (dismissing claim because the plaintiff "failed to identify any specific statement" that the product would work "without error"); *Long v. Hewlett-Packard Co.*, No. 06-2816, 2007 U.S. Dist. LEXIS 79262, at *24 (N.D. Cal. July 27, 2007) (dismissing claims where defendant was "not alleged to have made any representation as to the life of its [product]").

Likewise, purported misrepresentations regarding safety must say something specific about safety. *See Ramage v. Forbes Int'l*, 987 F. Supp. 810, 816 (C.D. Cal. 1997) (holding that advertising statements about general qualities of cars said nothing specific about safety: "[t]here is simply no statement regarding safety."); *Marcus v. Apple Inc.*, No. 14-3824, 2015 U.S. Dist. LEXIS 2140, at *12 (N.D. Cal. Jan. 8, 2015) ("None of these representations mentions the computers' allegedly defective logic board. . . . Plaintiffs' allegations do not correspond to the text of the four alleged . . . representations.").

Here, the *only* specific statements identified in the Complaint—that the products are "triple washed and ready to eat" and "ready to enjoy"—are not rendered false or misleading because the products were allegedly contaminated. (FAC ¶ 1.) In particular, the statements are not misleading because they do not guarantee or promise safety. (*Id.*) The statement "triple washed and ready to eat" means what it says, the product has been washed three times and is therefore ready to eat without further washing. The statement "ready to enjoy" is not only

inactionable puffery but similarly means, in context, nothing more than that the product is ready to eat without further washing.[2]

The statements "triple washed and ready to eat" and "ready to enjoy" do not equate to a promise that the products are free of all potential contaminants.  To allow a misrepresentation claim about safety absent any identification any specific *promise* made about safety, would be to convert misrepresentation claims into implied warranty claims, which impose legal obligations based on the *nature* of the product.  (*See* Cal. Com. Code § 2314.)  The Court should reject Plaintiffs' attempt to equate these distinct concepts by presuming promises nowhere made.

### B.   Plaintiffs' Defect Claim Again Fails as a Matter of Law.

Plaintiffs' claim for breach of implied warranty (the "Defect Claim") arises not from any misrepresentation, but from the putative contamination or defects of Taylor Farms' products.  (FAC ¶¶ 55-58.)  The claim fails as a matter of law based on the "economic loss" doctrine.

Economic loss consists of "damages for inadequate value, costs of repair and replacement of the defective product or consequent loss of profits."  *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004).  To recover such contract losses, a plaintiff is limited to the law of contract, and cannot recover such losses in tort unless he also alleges tort damages such as "personal injury or damages to other property."  *See N. Am. Chem. Co. v. Superior Court*, 59 Cal. App. 4th 764, 780 (1997) ("***in actions arising from the sale or purchase of a defective product, plaintiffs seeking economic losses must be able to demonstrate that either physical damage to property . . . or personal injury accompanied such losses***"); *accord City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1050 (9th Cir. 2014).  This rule exists to "prevent the law of contract and the law of tort from dissolving one into the other," *e.g.*, by allowing expansive contractual relief to boundless numbers of consumers with no contractual relationship to a defendant based on a tort theory.  *See Robinson*, 34 Cal. 4th at 988.

---

[2] The Court previously rejected the distinct argument that the Misrepresentation Claims failed because the statements constituted non-actionable "puffery."  (Order 8-9.)  Defendants hereby incorporate the prior discussion by reference to preserve the issue.  (*See* ECF No. 25 at 5-7.)

Here, as in their original complaint, Plaintiffs concede that "[t]his suit seeks only damages and equitable relief for recovery of economic injury . . . and it expressly is not intended to request any recovery for personal injury and claims related thereto." (FAC ¶ 43.) In connection with the prior motion to dismiss, Plaintiffs admitted that this concession barred absolutely their negligence cause of action but argued that it did not apply to the implied warranty claim. (*See* Order 4-5.) The Court did not rule on the issue as it dismissed the implied warranty claim on other grounds. (*Id.* at 5.) The Court should now rule on this issue of law in Defendants' favor because the implied warranty claim is a cause of action "which has traditionally been remedied by resort to the law of torts" and is thus barred by the economic loss rule based on Plaintiffs' disclaimer of personal injury damages. *Robinson*, 34 Cal. 4th at 988.

To be clear, a claim for breach of implied warranty with respect to food is a tort under California law. This matter is settled as a matter of law based on controlling California and Ninth Circuit authorities. *See Curry v. Fred Olsen Line*, 367 F.2d 921, 927 n.27 (9th Cir. 1966) ("***It is now well established in California that the so-called breach of warranty of fitness of food is really a tort, for which a species of strict liability is imposed***.") (citing *Greenman v. Yuba Power Prods., Inc.*, 59 Cal.2d 57, 62 (1963) (implied warranties on food products are governed by "the law of strict liability in tort"); *Klein v. Duchess Sandwich Co.*, 14 Cal.2d 272, 280 (1939) (public policy required treating implied warranties for food to be treated as tort)).

As explained by these cases, the law consciously developed in this manner with respect to *food* products. Notably, in the food context, there is no contractual requirement of "privity" between a plaintiff and a manufacturer. California court expressly jettisoned this *contractual* requirement for claims of implied warranty for food products because treating such claims as strict liability *torts* would ensure that manufacturers are maximally concerned about downstream safety. *See Greenman*, 59 Cal.2d at 62; *Klein*, 14 Cal.2d at 280.[3] Plaintiffs are attempting to

---

[3] The Court previously cited a case suggesting that implied warranty claims with respect to food may be used to recover economic loss. (*See* Order 5 (quoting *Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 871 (2000)).) This is true and uncontested. The economic loss doctrine only precludes recovery of economic loss for tort claims in the rare food case where there is no assertion of personal injury or damage to other property (as is the case here based on Plaintiffs' concession in their FAC).

benefit from this rule by asserting a claim for contract damages against Taylor Farms while conceding that they did not purchase the products from Taylor Farms.  (*See* FAC ¶¶ 31-32.)  In other words, Plaintiffs are seeking to claim the benefits of treating the claim as a tort (*i.e.*, lack of privity requirement) without accepting the attendant costs (*i.e.*, it cannot be used to collect non-physical injury economic damages).  The Court should reject this broad expansion of contractual liability against manufacturers with no contractual relationship with downstream consumers.

### C.    All of Plaintiffs' Claims Fail Because They Have Not Alleged Causation.

*All* of Plaintiffs' claims fail because they have not alleged that Taylor Farms' products caused them injury.  In particular, Plaintiffs' central theory regarding *E. coli* contamination is based entirely on (1) the allegation that they became "ill" after consuming Taylor Farms' products, (2) speculation that they became ill due to Taylor Farms' products because Sam's Club issued a purported precautionary recall of the products, (3) statements from the Mayo Clinic regarding the incubation period.  (FAC ¶¶ 7, 16.)  This is insufficient to allege causation.

### 1.    The Alleged Voluntary Recall Does Not Support Causation.

Recalls are issued for any number of reasons, including reasons relating to, *e.g.*, public perception, that have nothing to do with actual risk or contamination.  *See, e.g.*, *Fresh Express Inc. v. Beazley Syndicate*, 199 Cal. App. 4th 1038, 1053-54 (2011) (precautionary recall issued due to *E. coli* outbreak potentially resulting from supplier's spinach was later determined not attributable to supplier); *Little Lady Foods, Inc. v. Houston Cas. Co.*, 819 F. Supp.2d 759, 762-64 (N.D. Ill. 2011) (party decided to put a product on hold as a precaution when in fact there was no potential for injury to consumers).  That is why when a limited subset of food is being investigated, a broad recall may be initiated across entire industries.

Given the lack of any necessary connection, courts routinely dismiss claims based on an inference of wrongdoing grounded on alleged remedial measures like recalls.  *See Sloan v. GM LLC*, No. 16-7244, 2017 U.S. Dist. LEXIS 120851, at *23-24 (N.D. Cal. Aug. 1, 2017); *Stearns v. Select Comfort Retail Corp.,* No. 08-2746, 2009 U.S. Dist. LEXIS 48367, at *30 (N.D. Cal. June 5, 2009); *Simmons v. Bos. Sci. Corp.*, No. 12-7962, 2013 U.S. Dist. LEXIS 45852, at *12 (C.D. Cal. Mar. 25, 2013) ("Plaintiff fails to link the recalls or advisories to the malfunction at

issue here in any more than a conclusory manner, and courts have recognized that product recalls do not create a presumption that FDA requirements have been violated."). Any contrary rule would penalize manufacturers by construing precautions as admissions.

Here, the alleged impetus for the purported voluntary recall at Sam's Club was the CDC's precautionary "public advisory," which related generally to all lettuce products, isolated no cause, and did not implicate any processor of lettuce products. (FAC ¶ 16; RJN, Ex. A.) There is *no* indication that the alleged recall—by Sam's Club (not the CDC)—was due to the presence of *E. coli* in Taylor Farms' products. Indeed, the CDC recently concluded its investigation without finding any link between the *E. coli* outbreak and the practices of any manufacturer, including Taylor Farms. (RJN, Ex. A.)

### 2. Allegations of Mere Illness Do Not Support Causation.

Absent any alleged link between Taylor Farms' products and the outbreak, Plaintiffs' assertions of causation amount to allegations that they ate Taylor Farms' products and became sick thereafter. (FAC ¶¶ 31-32.) That is not enough to allege causation. *See Sarti v. Salt Creek Ltd.*, 167 Cal. App. 4th 1187, 1196 (2008) ("Just because you get sick soon after eating at a restaurant doesn't prove bad food or some other contamination at the restaurant caused it. Any other rule would be untenable, since it would make restaurants de facto health insurers of their customers."); *Moses v. Danek Med., Inc.*, No. 95-512, 1998 U.S. Dist. LEXIS 21110, at *22-23 (D. Nev. Nov. 18, 1998) ("It is not enough to show that the plaintiff ate the defendant's food and became ill, so long as he ate other things, and others who ate the food were not made ill. . . . Proof that an airplane has crashed does not make out a case against the manufacturer, where there is no evidence to show that it was not due to negligent flying.").

Even at the pleading stage, a plaintiff must allege facts regarding a food defect that would be sufficient to establish causation if later proven. *See Valdez v. Beard*, No. 14-1839, 2018 U.S. Dist. LEXIS 29645, at *18-19 (E.D. Cal. Feb. 22, 2018) ("his assertion that he came down with a bacterial infection as a result of eating the food . . . is conclusory"). It is not enough to make allegations "merely consistent with" their favored explanation. *See Eclectic Props. E., Ltd. Liab. Co. v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). "Something more is needed,

such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Id.*; *see also Fields v. Los Angeles*, No. 16-3213, 2017 U.S. Dist. LEXIS 222078, at *8 (C.D. Cal. Nov. 2, 2017) ("Without allegations to plausibly suggest causation, [defendant's] actions are 'merely consistent with' liability and therefore insufficient"); *In re Sony Gaming Networks Litig.*, 996 F. Supp. 2d 942, 965 (S.D. Cal. 2014) (allegations of causation "cannot be left to conjecture or speculation").

Here, the Complaint lacks any allegation that makes plausible Plaintiffs' claims of economic injury caused by contamination attributable to Taylor Farms in light of the multitude of potential reasons for Plaintiffs' illness.  Remarkably, there is no allegation in the FAC—conclusory or otherwise—that Plaintiffs were in fact exposed to *E. coli* (or the dangerous strain at issue).  (*See* FAC ¶¶ 31-32.)  No such allegation proved possible because no facts would support such a claim.  Although the FAC discusses the potentially life-threatening symptoms of *E. coli* exposure and the significant risks of hospitalization (*id.* ¶¶ 4, 7, 9), there is no allegation that Plaintiffs suffered similar symptoms (or even what their symptoms were).  There is no allegation in the FAC regarding what else Plaintiffs consumed or any attempt to verify that they suffered due to Taylor Farms' products.  There is no allegation that they undertook any testing, that a doctor diagnosed them with an infection, or that health officials concluded that they were victims.  There is no allegation that any other consumers besides Plaintiffs suffered similar symptoms or symptoms relating to *E. coli* exposure.  The mere allegation of illness of two individuals out of "[p]otentially tens of thousands of Taylor Farms consumers" is insufficient to establish plausibly that Taylor Farms' products were contaminated with *E. coli*.  (FAC ¶ 22.)

Allowing a class action covering tens of thousands of consumers to recover for the purchase price of food on so thin a reed would dramatically increase the exposure of food manufacturers, without any attendant benefit given that they are indisputably subject to strict liability for any physical injuries resulting from food contamination.

### 3.    The Authorities Plaintiffs Relied Upon Do Not Support Causation.

The FAC also includes *contra-indicators* of causation.  Plaintiff Musgrave claims to have become sick for the "next few days" after consumption.  (FAC ¶ 31.)  Plaintiff Gray claims to

have had unspecified "stomach issues" starting the next day after consuming the product the night prior, and within the same day a few days later. (*Id.* ¶ 32.) These repeated allegations of immediate impact are inconsistent with *E. coli* exposure based on the CDC guidance Plaintiffs rely upon in their FAC, which states that people typically become sick from *E. coli* "2-8 days (average of 3-4 days)" after exposure. (RJN, Ex. B.)

Given this guidance from their key source, Plaintiffs added an allegation in their FAC that "[a]ccording to the Mayo Clinic, *E. coli* symptoms can appear as soon as one day after exposure." (FAC ¶ 7.) As an initial matter, the cited guidance is not endorsed by the Mayo Clinic. Use of the webpage cited is expressly premised on agreement to its terms, which includes repeated disclaimers of the cited information. (RJN, Ex. D (Mayo Clinic "does not make any . . . endorsements whatsoever . . . with regard to the . . . information . . . provided").) Even if this reference is to be credited, it refutes rather than supports the conclusion that Plaintiffs were exposed to *E. coli*. The Mayo Clinic reference states that the alleged strain of *E. coli* at issue in this action causes *serious* symptoms such as "abdominal cramps, bloody diarrhea and vomiting." (RJN, Ex. C at 1.) It also provides a recovery time of "within a week" rather than the symptomatic period of a "few days" or a "day and the next" as alleged. (*Id.*) It also lists the multitude of potential causes of *E. coli* exposure that could have affected Plaintiffs. (*Id.*) Plaintiffs have not alleged that they became sick due to any wrongdoing of Defendants as opposed to the universe of factors that could have caused their vague symptoms.

### D. Plaintiffs Lack Standing to Seek Injunctive Relief.

The Court previously dismissed Plaintiffs' requests for injunctive relief for lack of standing. (Order 7.) The Court stated that "Plaintiffs do not allege that they intend to or would like to purchase any of the [products] in the future" and concede that the *E. coli* outbreak had passed, but allowed them leave to make such allegations if possible under Rule 11. (*Id.*) The Amended Complaint similarly does not include any such allegations or any other basis for injunctive relief. The Court should again dismiss Plaintiffs' requests for such relief.

## IV. CONCLUSION

Plaintiffs' Amended Complaint should be dismissed with prejudice.

1   Dated:  December 14, 2018

DAVIS WRIGHT TREMAINE LLP

By:  /s/ James H. Moon
       James H. Moon

*Attorneys for Defendants*