UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICK MUSGRAVE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>TAYLOR FARMS PACIFIC, INC., et al.,<br><br>Defendants. | Case No. 18-cv-02841-JSW<br><br>**ORDER GRANTING, IN PART, AND DENYING, IN PART, MOTION TO DISMISS, GRANTING LEAVE TO AMEND, AND SCHEDULING CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. No. 55 |

Now before the Court for consideration is the motion to dismiss filed by Taylor Farms Pacific, Inc., Taylor Farms Retail, Inc., Taylor Farms California, Inc. (collectively the "Taylor Farms Defendants"), Sam's West, Inc. ("Sam's"), and Walmart, Inc. ("Walmart") (collectively the "Retail Defendants").[1]  The Court has considered the parties' papers, relevant legal authority, and the record in this case, and it finds the motion suitable for disposition without oral argument. *See* N.D. Civ. L.R. 7-1(b).  The Court VACATES the hearing set for February 22, 2019, and it HEREBY GRANTS, IN PART, AND DENIES, IN PART, Defendants' motion.

**BACKGROUND**

Plaintiffs, Rick Musgrave ("Mr. Musgrave") and Margaret Gray ("Ms. Gray") (collectively, "Plaintiffs"), bring this putative class action on behalf of purchasers of the Taylor Farms Defendants' Romaine Lettuce Products.  (*See* First Amended Complaint ("FAC") ¶¶ 1, 17 (defining "Romaine Lettuce Products").)  Plaintiffs allege that Taylor Farms Pacific, Inc. "packages and processes various Taylor Farms products."  (*Id.* ¶ 24.)  Taylor Farms Retail, Inc.

---

[1] The Court shall refer to the Taylor Farms Defendants and the Retail Defendants collectively as "Defendants."

1

United States District Court
Northern District of California

1  "controls product sales and customer service, and generally facilitates communications with
2  consumers and the public. [It] also engages in the preparation of bagged lettuce and vegetables
3  and refrigerated warehousing and storage activities." (*Id.* ¶ 25.) Taylor Farms California, Inc.
4  "manufactures and delivers fresh produce to the food service industry. It offers salads and cut
5  fruits and vegetables." (*Id.* ¶ 26.) Plaintiffs allege that the Taylor Farms Defendants "operate
6  under parent company Taylor Fresh Foods, Inc.," do business under the name "Taylor Farms," and
7  "each …. participates in the manufacture, distribution, sale, marketing, and representation of" the
8  Romaine Lettuce Products.[2] Plaintiffs also allege "[e]ach Taylor Farms Defendant makes the
9  same representation that [the Romaine] Lettuce Products are 'ready to eat' and 'ready to enjoy.'"
10 (*Id.* ¶¶ 27-28; *see also id.* ¶¶ 1, 3, 5, 18.)

11  Plaintiffs allege the Retail Defendants "have sold Taylor Farms products for more than 10
12 years and have entered into marketing and sales agreements with Taylor Farms to promote and sell
13 Taylor Farms products at Walmart and Sam's Club stores" and on their websites. Plaintiffs allege
14 the websites include pictures of the Romaine Lettuce Products and the statements "ready to eat"
15 and "ready to enjoy". (*Id.* ¶ 5; *see also id.* ¶¶ 14-15, 29-30.)

16  Plaintiffs allege the representations that the Romaine Lettuce Products are "ready to eat"
17 and are "ready to enjoy" are false because for a period of time in 2018, they were contaminated
18 with a strain of "Shiga toxin-producing *E. coli*,… specifically strain O157:H7[.]"[3] (*Id.* ¶¶ 1, 4, 6-
19 11).

20  Plaintiffs allege that, on or about April 2, 2018, Mr. Musgrave "purchased Taylor Farms
21 Romaine Lettuce Products from Walmart in Martinez, California." (*Id.* ¶ 31.) Mr. Musgrave
22 alleges that he saw, read, and relied on the "representation on the packaging that the products were
23 'ready to eat' and 'ready to enjoy.'" (*Id.*) Mr. Musgrave alleges that he and his wife consumed
24 the products shortly after purchasing them and "became violently sick for the next few days."

---

[2]   Plaintiffs have not included any allegations relating to agency or alter ego.

[3]   When the Court refers to "*E. coli*" in this Order, if refers to the strain that forms the basis of Plaintiffs' Complaint.

1  (*Id.*)  Mr. Musgrave alleges he would not have purchased the Romaine Lettuce Products had he
2  known they were not ready to eat, were not ready to enjoy, and were unusable.  (*Id.*)
3  On or about April 13, 2018, Ms. Gray purchased Taylor Farms Romaine Blend Salad from
4  Sam's Club in Oxnard, California, and she consumed some of this product that day.  (*Id.* ¶ 32.)
5  Ms. Gray alleges that before she purchased the product she saw, read, and relied on the
6  "representations that" the Romaine Lettuce Products were ready to eat and ready to enjoy and that
7  she would not have purchased the products had she known they were unusable.  (*Id.*)  Ms. Gray
8  alleges that the next day she "was very sick with stomach issues and was homebound for all of
9  that day and the next because of it."  (*Id.*)  On or about April 16, 2018, Ms. Gray ate more of the
10 product with her daughter and alleges she and her daughter fell ill that night.  (*Id.*)
11 Based on these and other allegations, which the Court shall address as necessary, Plaintiffs
12 assert a claim for breach of implied warranty of merchantability (the "implied warranty claim").
13 Plaintiffs also assert claims for violations of the Consumer Legal Remedies Act, California Civil
14 Code sections 1750, *et seq.* (the "CLRA claim"), violations of the False Advertising Law,
15 California Business and Professions Code sections 17500, *et seq.* (the "FAL claim"), and
16 violations of the Unfair Competition Law, California Business and Professions Code sections
17 17200, *et seq.* (the "UCL claim") (collectively the "Misrepresentation Claims").[4]

## ANALYSIS

**A.  Applicable Legal Standard**

A motion to dismiss for failure to state a claim is evaluated pursuant to Rule 12(b)(6).  A motion to dismiss for lack of statutory standing also is evaluated under Rule 12(b)(6).  *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  A motion to dismiss is proper under Rule 12(b)(6) where the pleadings fail to state a claim upon which relief can be granted.  A court's "inquiry is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th

---

[4]  Defendants argue Plaintiffs fail to show they are entitled to injunctive relief, but Plaintiffs do not seek an injunction.  Accordingly, the Court DENIES, AS MOOT, Defendants' motion on that basis.

Cir. 2008).

Even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Pursuant to *Twombly*, a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Claims sounding in fraud or mistake are subject to heightened pleading requirements, which require that a plaintiff claiming fraud "must state with particularity the circumstances regarding fraud or mistake." Fed. R. Civ. P. 9(b). In addition, a claim "grounded in fraud" may be subject to Rule 9(b)'s heightened pleading requirements. A claim is "grounded in fraud" if the plaintiff alleges a unified course of fraudulent conduct and relies entirely on that course of conduct as the basis of his or her claim. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1104 (9th Cir. 2003). Rule 9(b)'s particularity requirement is satisfied if the complaint "identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see also Vess*, 317 F.3d at 1106. Accordingly, "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess*, 317 F.3d at 1107 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

If the allegations are insufficient to state a claim, a court should grant leave to amend, unless amendment would be futile. *See, e.g., Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.     The Group Pleading Issue.**

When the Court dismissed Plaintiffs' original complaint, it ordered Plaintiffs not to lump

4

the Defendants together. The Taylor Farms Defendants argue that Plaintiffs still fail to adequately distinguish between them and that the Court should dismiss the complaint on that basis. Plaintiffs include allegations about what each Taylor Farms defendant does and allege that each Taylor Farms Defendant made the "ready to eat" and "ready to enjoy" representations at issue. At this stage, the Court concludes that Plaintiffs have adequately distinguished the Taylor Farm Defendants and have provided them with notice as to how and why they are alleged to be liable.

Accordingly, the Court DENIES, IN PART, the motion to dismiss.

**C.    The Court Denies the Motion to Dismiss the Implied Warranty Claim.**

Plaintiffs allege that Defendants breached a warranty of merchantability "implied in the contract of sale" for Romaine Lettuce Products with a "Best By" date from February 1, 2018 to "the present." (FAC ¶¶ 55-56.) Plaintiffs allege Defendants breached that warranty because the Romaine Lettuce Products are "completely unusable, lack even the most basic degree of fitness for ordinary use, and are not safe for human consumption" due to contamination with *E. coli*. (*Id.*) Plaintiffs allege they became physically ill as a result of consuming the Romaine Lettuce Products, but they do not seek damages resulting from any physical injuries. (*See, e.g.,* FAC ¶ 43.) Defendants renew their argument that the implied warranty claim is barred by the economic loss rule.[5]

The California Supreme Court has explained that "[e]conomic loss consists of damages for inadequate value, costs of repair and replacement of [a] defective product or consequent loss of profits – without any claim of personal injury or damages to other property." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 988 (2004) (internal quotations and citations omitted).

> Simply stated, the economic loss rule provides: Where a purchaser's expectations in a sale are frustrated because the product he bought is not working properly, his remedy is said to be in contract alone, for he has suffered only "economic" losses. This doctrine hinges on a distinction drawn between transactions involving the sale of goods for commercial purposes where economic expectations are protected by commercial and contract law, and those involving the sale of defective products to individual consumers who are injured in a

---

[5]    Defendants also argue Plaintiffs fail to allege causation. Because Defendants argue that each of Plaintiffs' claims fails for that reason, the Court addresses that argument in the following section.

5

> manner which has traditionally been remedied by resort to the law of torts. The economic loss rule requires a purchaser to recover in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm above and beyond a broken contractual promise. Quite simply, the economic loss rule prevents the law of contract and the law of tort from dissolving one into the other.

*Id.* (internal quotations, brackets, and citations omitted).

To assert a claim for breach of the implied warranty, a plaintiff generally must "stand in vertical contractual privity with the defendant. A buyer and seller stand in privity if they are in adjoining links of the distribution chain." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citation omitted). As a result, an "end consumer … who buys from a retailer is not in privity with a manufacturer." *Id.* However, "particularized exceptions" to the privity rule exist, including where a plaintiff relies on representations on a manufacturer's label or on its advertisements. *Id.* Another exception is the so-called "foodstuffs" exception, "where it is held that an implied warranty of fitness for human consumption runs from the manufacturer to the ultimate consumer regardless of privity of contract." *Burr v. Sherwin Williams Co.*, 42 Cal. 2d 682, 695 (1954); *see also Vaccarezza v. Sanguinetti*, 71 Cal. App. 2d 687, 689 (1945) ("The warranty applies to the sale of foodstuffs for human consumption, and runs with the goods to the ultimate consumer, there being no requirement of privity between the ultimate consumer and manufacturer.").

Defendants argue that the economic loss rule must apply when the "foodstuff" exception is involved because the Ninth Circuit has stated that "[i]t is now well established in California that the so-called breach of warranty of fitness of food is really a tort, for which a species of strict liability is imposed." *Curry v. Fred Olsen* Line, 367 F.2d 921, 927 n.27 (9th Cir. 1966) (citing cases). Plaintiffs argue that the claim sounds in contract and, thus, the economic loss rule does not bar their claims.

The California Court of Appeal has noted that when foodstuffs are involved, "the theory of breach of an implied warranty of merchantability has closer affinities to tort law than to contract law because it allows recovery of damages, without regard to privity of contract, for personal

6

injuries[.]" *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.*, 78 Cal. App. 4th 847, 871 (2000). The *Shade* court noted, however, that application of the foodstuffs exception also permits recovery of damages for "economic loss." *Id.*

In *Klein,* the California Supreme Court determined that public policy supported the adoption of a foodstuffs exception.

> Many statutes have been enacted in recent years which have had for their purpose the safeguarding of the public health, such as the pure food and drug acts, the regulation of milk and dairy products, etc., the aim and purpose of which enactments are that, in the interest of the public welfare, only wholesome food may be sold for human consumption. … As hereinbefore has been said, the remedies of an injured consumer of unwholesome food ought not to be made to depend "upon the intricacies of the law of sales," and the warranty of the manufacturer to such consumer should not be made to rest solely on "privity" of contract.

*Klein*, 14 Cal. 2d at 282 (citation omitted and quoting *Ketterer v. Armour & Co.*, 200 F. 322 (S.D.N.Y. 1912); *see also id.* at 278 ("Considerations of public policy demand that the utmost care and cautious be exacted from the manufacturer of articles of food[.]") (quoting *Ward Baking Co. v. Trizzino*, 27 Ohio App. 475, 485 (1928)).[6]

Thus, the foodstuffs exception is designed to discourage the production of adulterated, dangerous foods and to protect consumers from injuries that can result from such products. Those aims would not be served by allowing a manufacturer to escape liability for producing an adulterated product that posed a risk to human health simply because the ultimate consumer was lucky enough to avoid being physically injured by the product. *See, e.g., Mexicali Rose v.*

---

[6] Other jurisdictions have recognized that the foodstuffs exception is directed towards protection of the public. *See, e.g., Jacob E. Decker & Sons v. Capps*, 164 S.W.2d 828, 829 (Tex. 1942) ("[W]here the food products sold for human consumption are unfit for that purpose, there is such an utter failure of the purpose for which the food is sold, and the consequences of eating unsound food are so disastrous to human health and life, that the law imposes a warranty of purity in favor of the ultimate consumer as a matter of public policy."); *Jones v. Gulf States Steel Co.,* 88 So. 21, 23 (Ala. 1921) ("The exception here referred to grew out of the necessity of the case, sustaining a wise public policy for the protection of human life and health, and placed upon the manufacturer and vendor of drugs, foods, and beverages, a high degree of care because of their superior knowledge of the articles manufactured, and the necessity reliance which the public must place upon them.").

*Superior Court*, 1 Cal. 4th 617, 621 (1992) ("[A]cceptance of an implied warranty rule against manufacturers in cases involving unfit foodstuffs was based on the rationale that a manufacturer that sold food items could no longer hide behind the shield of privity to absolve itself of liability."). Consequently, the Court reads the foodstuffs exception as designed to protect consumers from adulterated food items that pose a risk to human health, and not merely to ensure a remedy for those consumers who have suffered a physical injury because of that risk.

While Defendants' argument is not based on lack of privity, under their theory a person who got sick from eating a sandwich laden with maggots (*see Klein*) could pursue a claim for breach of implied warranty but *only* if they asked for damages for personal injuries. Defendants' argument about the economic loss rule also suggests that an individual who ate the same sandwich without adverse effects would not be able to pursue a breach of implied warranty claim because they would not have suffered any loss beyond the purchase price of the sandwich.

In cases that address the foodstuffs exception in the context of privity, the rationale for permitting a claim to proceed is that the alleged defect has rendered the food unfit for human consumption. In the hypothetical described above, both individuals purchased a product which breached the implied warranty in a way that allegedly poses a risk to human health and both suffered damages. The Court concludes neither individual should be precluded from pursuing a claim simply because they do not or cannot seek damages for personal injuries. For example, citing the foodstuffs exception in a breach of implied warranty case, the Ninth Circuit determined the plaintiffs had "allege[d] injury in the form of the amount paid for each product" but affirmed dismissal of the claim on other grounds. 654 Fed. App'x 358, 363 (9th Cir. 2016) (citing *Jones v. ConocoPhillips*, 198 Cal. App. 4th 1187, 1201 (2011)). In addition, cases recognizing the foodstuffs exception have not expressly limited the exception to situations where the plaintiff suffered physical injury from the food product at issue. *See Benavides v. Kellogg Co.*, No. CV 10-2294-JST (PJWx), 2011 WL 13269720, at *7-8 (C.D. Cal. Mar. 21, 2011) (noting that none of the cases cited in *Shade* "explicitly stated that the privity exception rests solely on the presence of physical rather than economic injury" and denying motion to dismiss breach of implied warranty of merchantability in a case where plaintiff did not allege physical injury).

8

Plaintiffs allege they consumed Romaine Lettuce Products, and they allege those products were contaminated with *E.coli*, which caused them to become sick. Although Plaintiffs do not seek damages for anything other than the cost of the products, like the *Benavides* court, this Court declines to read the foodstuff exception cases so narrowly as to preclude recovery under an implied warranty claim where a plaintiff only seeks recovery for economic loss.

Accordingly, the Court DENIES Defendants motion on this basis.

### D.  Plaintiffs Sufficiently Allege Causation.

Defendants also argue each of Plaintiffs' claims fail because Plaintiffs do not adequately allege facts to show causation. Plaintiffs allege they purchased Romaine Lettuce Products and allege that they ate those products, they became sick. Although Defendants argue that the symptoms associated with *E.coli* would not appear so quickly, Plaintiffs have alleged that symptoms can appear as soon as one day after exposure. (FAC ¶ 7.) The Court concludes the allegations are sufficient and concludes that Defendants' arguments regarding causation are better addressed in the context of summary judgment.

Accordingly, the Court DENIES, IN PART, Defendants' motion.

### E.  The Court Dismisses the Misrepresentation Claims, in Part.

Defendants argue that Plaintiffs still fail to allege facts to show they have statutory standing to pursue the Misrepresentation Claims because they fail to allege they relied on a misrepresentation made by each Defendant. The Retailer Defendants also argue that the facts are insufficient to allege they made, adopted, or controlled the alleged misrepresentations.

#### 1.  Mr. Musgrave.

Mr. Musgrave alleges that he saw, read, and relied on the "representation on the *packaging* that the products were 'ready to eat' and 'ready to enjoy'" and alleges that each Taylor Farms Defendant made those representations. (FAC ¶¶ 28, 31 (emphasis added).) Mr. Musgrave also alleges he would not have purchased Romaine Lettuce Products had he known those representations were not true. As to the Taylor Farms Defendants, the Court concludes Mr. Musgrave adequately alleges reliance, and it DENIES, IN PART, their motion on this basis.

"The concept of vicarious liability has no application to actions brought under the" UCL.

9

*In re Hydroxycut Marketing and Sales Litig.*, 299 F.R.D. 648, 656 (S.D. Cal. 2014) (quoting *People v. Toomey*, 157 Cal. App. 3d 1, 14 (1984)).  Rather, "a defendant's liability … must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices.'"  *Hydroxycut*, 299 F.R.D. at 656*.* (quoting *Emery v. Visa Int'l Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (in turn quoting *Toomey*, 157 Cal. App. 3d at 15)).

Plaintiffs argue that their new allegations are analogous to the facts alleged in *Dorfman v. Nutramax, Lab., Inc.*, No. 13-cv-0873 WQH (RBB), 2013 WL 5353043 (S.D. Cal. Sept. 23, 2013).  In that case, the court denied a motion to dismiss claims against retailers where the plaintiffs alleged those defendants "repeat[ed] and reinforce[ed] the false and misleading statements made on the packaging and labeling" by making statements on their websites.  The plaintiffs also alleged the retailers "entered into marketing and sales agreements with the [manufacturer] to further promote and repeat the false and deceptive statements at issue." *Id.*, 2013 WL 5353043, at *1, 3.  The court reasoned that those allegations in combination with allegations that the retailers provided pictures of the allegedly false packaging and labelling were sufficient to show they "participat[ed] in the unlawful practice with unbridled control over the practices" and could be held liable.  *Id.*, 2013 WL 5353043, at *14.

In the *Hydroxycut* case*,* the plaintiffs also alleged that retailers could be held liable for alleged misrepresentations made by the manufacturers of the product at issue.  That court noted that it was "unaware of any authority for the proposition that under state consumer protection laws, a retailer adopts statements made on product packaging." *Id.* at 657.  It also disagreed with *Dorfman* to the extent that case could be construed to hold "a retailer defendant who disseminates or repeats deceptive statements can be held liable" under California's consumer protection statutes "for statements on product packaging that the retailer did not control."  *Id.*  The court determined that "[t]o the extent the Retailer Defendants issued their own advertisements" or displayed signs for the product, they "arguably controlled the advertising and adopted the statements made therein." *Id.* at 656.  It also stated that "[i]f a retailer goes above and beyond selling a product and displays additional promotional materials, the retailer arguably can be held liable for *those specific* advertisements, but should not be deemed to have adopted all representations made by the

1   manufacturer about the product." *Id.* at 657 (emphasis in original).

2   Mr. Musgrave alleges that "[t]he Walmart website includes pictures of numerous Taylor
3   Farms Products including those containing romaine lettuce and also includes statements like
4   'ready to eat' and 'ready to enjoy'." (FAC ¶ 29.) Mr. Musgrave also alleges that Walmart
5   promotes and markets Taylor Farms products in its stores. Unlike his allegations relating to the
6   Walmart website, he does not allege the in-store promotional and marketing material includes
7   statements that the Romaine Lettuce Products are "ready to eat" and "ready to enjoy."

8   The court in *Hydroxycut* dismissed most of the plaintiffs' claims because they had not
9   specified the advertisements they had seen other than the product labels. *Id.* at 656-57. Mr.
10  Musgrave does not allege that he visited Walmart's website or that he viewed *those* statements
11  before he purchased the Romaine Lettuce Products. Thus, he has not alleged facts to show he
12  relied on any statement on Walmart's website. While Mr. Musgrave may allege Walmart
13  "promotes" Taylor Farms products in its store, he has not alleged that he relied on any in-store
14  advertising or promotional materials that include the representations that Romaine Lettuce
15  Products were "ready to eat" and "ready to enjoy." *See, e.g., Sud v. Costco Wholesale Corp.*, 217
16  F. Supp. 3d 1075, 1084 (N.D. Cal. 2017) (concluding plaintiffs had not alleged reliance on
17  defendant's Code of Conduct where they did not allege they read it), *aff'd*, 713 Fed. Appx. 719,
18  721 (9th Cir. 2018); *Reed v. NBTY, Inc.*, No. EDCV 13-0142 JGB (OPx), 2014 WL 12284044, at
19  *7-*10 (C.D. Cal. Nov. 18, 2014) (finding plaintiffs lacked standing to sue for representations
20  made on defendants' products or websites where they had not viewed labels or visited websites
21  prior to purchase). Mr. Musgrave does not allege that he purchased the products at Sam's and saw
22  and relied on the statements on Sam's in-store promotional materials or advertising or that he
23  visited Sam's website. Accordingly, he also has not alleged facts to show he relied on any
24  statements made by Sam in-store or on its website.

25  The only statements that Mr. Musgrave has alleged he relied on were the statements on the
26  product packages. Although he alleges that the Retail Defendant and the Taylor Farms
27  Defendants had marketing agreements, he does not include any facts to suggest that the Retail
28  Defendants had any involvement in what statements were placed on the products packaging.

11

"Holding retailers liable for all statements made on products that they sell would impose the type of secondary liability that has been rejected by courts." *Hydroxycut*, 299 F.R.D. at 657. Mr. Musgrave fails to allege facts showing he relied on a statement made by one of the Retail Defendants, and the allegations are not sufficient to show the Retail Defendants made, adopted, or controlled the statements on the Romaine Lettuce Products' packaging.

Accordingly, the Court GRANTS, IN PART, the Retail Defendant's motion on these claims. The Court will grant Mr. Musgrave one final opportunity to amend his claim against the Retail Defendants if he can, in good faith and in compliance with his allegations under Rule 11, allege that he saw the "ready to eat" and "ready to enjoy" representations on one or both of the Retail Defendants' websites or on one or both of their in-store promotional materials or advertisements and that he relied on those statements in making his decision to purchase the Romaine Lettuce Products.

### 2. Ms. Gray.

Ms. Gray alleges that before she purchased the Romaine Salad Blend from Sam's, she "saw, read, and relied" on the representations it was "ready to eat" and "ready to enjoy" and would not have purchased that product had she known they were not true. (FAC ¶ 32.) Ms. Gray does not allege the "source" of the alleged representations, *i.e.* whether they were on the packaging of the product, in an advertisement issued by one or more of the Defendants, on one or both of the Retail Defendants' website or on one or both of the Retail Defendants' in-store advertising or promotional materials. Because she has not clearly identified the source of the representation, the Court concludes her allegations do not satisfy Rule 9(b) and are insufficient to allege she relied on a statement made by any Defendant.

The Court will grant Ms. Gray one final opportunity to amend her misrepresentation claims against the Defendants if, in good faith and in compliance with her obligations under Rule 11, allege: (1) she saw, read, and relied on statements on the product packaging before deciding to purchase the Romaine Salad Blend; and (2) as to the Retail Defendants, can allege that she saw the "ready to eat" and "ready to enjoy" representations on one or both of the Retail Defendants' websites or on one or both of their in-store promotional materials or advertisements and that she

12

relied on those statements in making her decision to purchase the Romaine Lettuce Products.

**CONCLUSION**

For the foregoing reasons, the Court GRANTS, IN PART, AND DENIES, IN PART, Defendants' motion to dismiss, and GRANTS Plaintiffs a final opportunity to amend the misrepresentation claims. If Plaintiffs choose to amend, they shall file an amended complaint by no later than March 12, 2019. Defendants shall answer or otherwise respond by April 2, 2019. The Court FURTHER ORDERS the parties to appear for a case management conference on May 3, 2019 and to submit a joint case management conference statement by April 26, 2019.

**IT IS SO ORDERED.**

Dated: February 20, 2019

_____
JEFFREY S. WHITE
United States District Judge